UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TYRONE ANTWAN WALKER,

      Plaintiff,

v.                                                    Case No. 3:24-cv-773-MMH-LLL

J. VANDIGO, et al.,

      Defendants.

_____

## ORDER

### I. Status

Plaintiff Tyrone Antwan Walker, an inmate in the custody of the Florida Department of Corrections (FDC), initiated this action on July 29, 2024,[1] by filing a Complaint for Violation of Civil Rights (Doc. 1; Complaint)[2] with attachments (Docs. 1-1 through 1-3). In the Complaint, he names the following Defendants: (1) Sergeant J. Vandigo, (2) Officer N. Wright, (3) Lieutenant Tyler Watson, and (4) Sergeant Sean Bailey.[3] See Complaint at 3–5. Walker raises Eighth Amendment failure to protect and failure to intervene claims

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] The Court previously dismissed the claim against LPN Lucinda O'Connor. See Order (Doc. 7).

against Defendants Vandigo, Wright, Watson, and Bailey. See id. at 6. Walker requests declaratory and injunctive relief, as well as monetary damages. See id. at 17. This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 15; Motion). Walker opposes the Motion. See Plaintiff's Opposition to the Defendant's [sic] Motion to Dismiss (Doc. 20; Response). The Motion is ripe for review.

## II. Walker's Allegations[4]

Walker alleges that on April 25, 2022, at Union Correctional Institution, he informed an "unknown officer" that other inmates in the quad were saying that Defendant Bailey "had promise[d] money if someone stab[bed] [] Walker." Complaint at 10. That same day, another inmate, Benito Santiago yelled out of his cell that he had placed an inmate request under Walker's name "to get [] Walker in Education just so he can stab [] Walker when they get to the classroom." Id. Walker asserts that he then submitted an informal grievance on April 27, 2022, complaining about Santiago's request on his behalf. Id. at 11. According to Walker, Defendant Watson denied it without investigating

---

[4] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Walker, and accept all reasonable inferences that can be drawn from such allegations. See Holland v. Carnival Corp., 50 F.4th 1088, 1093 (11th Cir. 2022). As such, the facts recited here are drawn from the Complaint and may well differ from those that ultimately can be proved.

Walker's allegations. Id. Walker alleges that when Defendant Watson denied the grievance, he stated, "There is no a way to prove who put the request in. Staff members collecting mail inspect it to insure [sic] inmates do not put mail in other inmates['] names. . . . I will continue to monitor and advise staff." Doc. 1-1 at 4; see also Complaint at 11.

Next, Walker asserts that on July 17, 2022, Defendant Vandigo removed Walker from his cell and escorted him to the shower. Complaint at 12. As Defendant Vandigo escorted Walker through the quad, "all the Latin King gang members and Blood gang members started banging on the cell doors to come back out [of] the[ir] cells." Id. According to Walker, Defendant Wright then proceeded to a Latin King gang member's cell, talked to him, and removed him from the cell. Id. Walker alleges that the Defendant Wright escorted the Latin King gang member down the stairs and into the middle of the quad "to sit down and get his hair cut." Id.

Walker states that to return to his cell "he would have to walk from one end of the quad where showers [are] located at, to the other end of the quad." Id. As Defendant Vandigo returned Walker to his cell, the Latin King gang member jumped out of the chair and began to stab Walker. Id. at 12–13. Walker alleges that Defendant Vandigo slammed Walker to the floor, but the Latin King gang member continued to stab him. Id. at 13. According to Walker,

the Latin King gang member stabbed him six times. Id. "Then finally Defendant Vandigo [] laid on [] Walker and the Latin King gang member inmate stopped stabbing [] Walker and Defendant Wright [] had handcuffed the Latin King gang member inmate." Id.

Walker asserts that on July 21, 2022, Defendant Bailey arrived at his cell door and "started making fun of him" for the above incident. Id. at 14. According to Walker, Defendant Bailey "admitted that he was the one who sent the Latin King gang member inmate to stab [] Walker." Id. Based on these allegations, Walker alleges that Defendants violated the Eighth Amendment when they failed to protect Walker from the gang member's attack and failed to intervene during the attack. Id. at 6.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004). Indeed, while

"[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter,

5

accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

## IV. Eighth Amendment Failure to Protect and Failure to Intervene

The Eighth Amendment's "prohibition of cruel and unusual punishment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" Cox v. Nobles, 15 F.4th 1350, 1358 (11th Cir. 2021) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To succeed on a failure to protect claim, a plaintiff must show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the prison official was deliberately indifferent to the risk, and (3) the constitutional violation caused his injuries. Id. at 1357–58. Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifference, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024). A defendant was not deliberately indifferent if he responded reasonably to the risk. Id.

Prison officials also may be held liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998); see also Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (per curiam) (analyzing an Eighth Amendment

6

claim against a prison official who allegedly failed to intervene during an altercation between a prisoner-plaintiff and a fellow inmate). However, in order for liability to attach, the officials must have been in a position to intervene. Ensley, 142 F.3d at 1407.

## V. Analysis

### A. Eleventh Amendment Immunity

First, Defendants argue that they are entitled to sovereign immunity as to Walker's Eighth Amendment claims against them in their official capacities. Motion at 7–8. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It is well-settled that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Papasan v. Allain, 478 U.S. 265, 276 (1986) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984)). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326,

7

1336 (11th Cir. 1999). In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. <u>Quern v. Jordan</u>, 440 U.S. 332, 340–45, 99 S.Ct. 1139, 1144–45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. <u>See</u> <u>Gamble</u>,[5] 779 F.2d at 1513–20.

Accordingly, in <u>Zatler</u>, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. <u>Id.</u> Here, the Eleventh Amendment bars suit to the extent Walker seeks monetary damages from Defendants in their official capacities. Therefore, Defendants' Motion is due to be granted on that basis.

## B. Failure to State a Claim

Defendants argue that Walker fails to state Eighth Amendment failure to protect and failure to intervene claims against them. Motion at 9–18. The Court discusses each Defendant in turn.

---

[5] <u>Gamble v. Fla. Dep't of Health & Rehab. Serv.</u>, 779 F.2d 1509 (11th Cir. 1986).

### 1. Defendant Watson

In the Complaint, Walker essentially alleges that Defendant Watson should have done more to protect Walker from the gang member attack on July 17, 2025, after Defendant Watson received his grievance about inmate Santiago. Complaint at 10–12. However, not addressing a grievance in the manner a prisoner would like, without more, does not render an individual liable for the underlying constitutional violation. See Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013)[6] ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)).

There are circumstances in which a defendant's failure to act in response to an inmate's grievances may result in a constitutional violation. See Goebert v. Lee Cnty., 510 F.3d 1312, 1327–29 (11th Cir. 2007) (finding that a defendant's lack of action in response to an inmate's written complaint amounted to deliberate indifference and the delay attributable to the defendant's deliberate indifference may have caused the inmate's injury). In

---

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Goebert, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. 510 F.3d at 1318. The plaintiff alleged in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of miscarriages. Id. The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite the plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to set up an appointment for her with an outside obstetrician." Id. at 1328. In finding that the defendant was not entitled to summary judgment, the Eleventh Circuit noted that the inmate's written complaint contained sufficient information to provide the defendant with subjective knowledge of her serious medical need, and his failure to take action in response to her complaint because he did not believe her amounted to deliberate indifference. Id. at 1327–28.

But the facts of this case are distinguishable from those in Goebert. Whereas the defendant in Goebert completely disregarded his duty to investigate the inmate's time-sensitive serious medical complaints, Defendant Watson considered and addressed Walker's complaint. See Doc. 1-1 at 4. Moreover, Walker fails to plead any factual allegations to suggest the

10

grievance about inmate Santiago, "a known Blood gang member," Complaint at 10, would have alerted Defendant Watson to the possibility of an attack by a Latin King gang member such that Defendant Watson should have taken precautionary measures. Indeed, the incident with inmate Santiago and the gang member attack appear to be wholly unrelated. As such, Walker fails to state an Eighth Amendment failure to protect claim against Defendant Watson.

Insofar as Walker alleges Defendant Watson failed to intervene in the gang member attack, he also does not state a claim for relief. Walker does not assert that Defendant Watson was in in a position to intervene in the attack or, even, present for it. See Ensley, 142 F.3d at 1407. Therefore, the failure to intervene and failure to protect claims against Defendant Watson are due to be dismissed.

### 2. Defendants Vandigo and Wright

Walker also does not state a failure to protect claim against Defendants Vandigo and Wright. Walker provides no factual allegations that would suggest Defendants Vandigo and Wright should have anticipated the gang member's attack on July 17th. See generally Complaint. While Walker points to his allegation that the Latin King gang members and Blood gang members started banging on their cell doors when Defendant Vandigo was escorting him

11

to the shower, Response at 3–4, this factual allegation alone does not plausibly suggest that Defendants Vandigo and Wright should have anticipated the attack on Walker.[7]

To the extent Walker argues that Defendant Wright failed to protect him because the gang member was able to jump out of the chair, he does not present sufficient facts to support his claim for relief. Walker asserts that Defendant Wright removed the <u>handcuffed</u> gang member from his cell. Complaint at 12. It is not clear whether Defendant Wright removed the handcuffs from the gang member when he sat in the chair or the gang member slipped out of his handcuffs unbeknownst to Defendant Wright, or where Defendant Wright was located relative to the gang member when he assaulted Walker. In sum, Walker offers no factual allegations that would allow the Court to infer Defendant Wright acted with more than mere negligence.

Walker's failure to intervene claim similarly fails because Defendants Vandigo and Wright intervened in the assault. Defendant Vandigo attempted to shield Walker, while Defendant Wright handcuffed the gang member. <u>Id.</u> at

---

[7] In the Response, Walker states that when this occurred, "Defendant Vandigo looked at [him] and smiled and said, 'everybody want [sic] to get you.'" Response at 4. However, Walker may not amend his Complaint in a response to a motion to dismiss, <u>see</u> Fed. R. Civ. P. 7(b); <u>Huls v. Llabona</u>, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (noting that a plaintiff cannot raise new arguments in a response to a motion to dismiss and instead must seek leave to amend his complaint).

13. Walker's mere speculation that Defendants Vandigo and Wright did not intervene in the attack as quickly as he would have liked is insufficient to sustain his failure to intervene claim. Therefore, the claims against Defendants Vandigo and Wright are due to be dismissed.

### 3. Defendant Bailey

To the extent Walker alleges Defendant Bailey is liable because he did not intervene in the assault, he fails to state a claim for relief. Walker does not allege that Defendant Bailey was present during the assault. See generally Complaint. Thus, he was not in a position to intervene, and liability does not attach. See Ensley, 142 F.3d at 1407.

Nevertheless, the Court finds Walker states a failure to protect claim against Defendant Bailey. Walker alleges that approximately 3 days after the assault, Defendant Bailey arrived at his cell and stated, "I heard you got hurt." Doc. 1-1 at 20. According to Walker, Defendant Bailey then laughed and said, "I did that." Id. Walker's assertions suggest that Defendant Bailey knew Walker faced an obvious risk of harm from the gang member, but Defendant Bailey acted deliberately indifferent to that risk. Thus, at this stage of the proceedings, taking Walker's allegations as true, as the Court must, Walker has alleged a plausible failure to protect claim against Defendant Bailey.

13

## C. Qualified Immunity

Defendants alternatively assert that they are entitled to qualified immunity. Motion at 18–20. The Court notes that although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting St. George, 285 F.3d at 1337). The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).
>
> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the

14

doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) (internal quotation marks and alteration omitted).

To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established...in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff]

15

> must satisfy both showings. <u>Maddox</u>, 727 F.3d at 1120–21 (citation omitted).

<u>Jones v. Fransen</u>, 857 F.3d 843, 850–51 (11th Cir. 2017); <u>see</u> <u>King v. Pridmore</u>, 961 F.3d 1135, 1142 (11th Cir. 2020).

> A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

<u>Gilmore v. Ga. Dep't of Corr.</u>, 144 F.4th 1246, 1258 (11th Cir. 2025) (en banc) (quoting <u>T.R. by and through Brock v. Lamar Cnty. Bd. of Educ.</u>, 25 F.4th 877, 883 (11th Cir. 2022)).

Because the failure to intervene claim against Defendant Bailey and all claims against Defendants Watson, Vandigo, and Wright are due to be dismissed, the Court need not address qualified immunity as to those claims. However, as to the failure to protect claim against Defendant Bailey, the Court finds he is not entitled to qualified immunity. Accepting as true Walker's allegations with respect to Defendant Bailey, the Court determines that Walker has alleged facts sufficient to state a plausible failure to protect claim. Because Walker stated a plausible claim against Defendant Bailey, he is not entitled to qualified immunity at this stage of the proceedings.

Therefore, it is now **ORDERED:**

1.    Defendants Watson, Vandigo, Wright, and Bailey's Motion to Dismiss (Doc. 15) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED to the extent** that the Court dismisses the official capacity claims against Defendants Watson, Vandigo, Wright, and Bailey; the failure to intervene claims against Defendants Watson, Vandigo, Wright, and Bailey; and the failure to protect claims against Defendants Watson, Vandigo, and Wright.

2.    The only claim remaining is a failure to protect claim against Defendant Bailey. Defendant Bailey shall respond to the Complaint (Doc. 1) no later than **April 6, 2026**. Upon the filing of his answer, the Court, by separate Order, will set deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of March, 2026.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 3/2
c:    Tyrone Antwan Walker, #B04225
      Counsel of record

17